87 F.3d 1317
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Thomas CHAPLEAU, Plaintiff-Appellant,
v.
CARE AMERICA, SOUTHERN CALIFORNIA, Defendant-Appellee.
 No. 94-56776.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 4, 1996.
Decided June 14, 1996.
 
 Before: FARRIS, FERNANDEZ, and THOMAS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Thomas Chapleau appeals the district court's grant of summary judgment in favor of CareAmerica in this action under the Employee Retirement Income Security Act, 29 U.S.C. § 1132(a)(1)(B). Chapleau opposes summary judgment on two grounds: 1) there is a genuine question as to whether the treatment in Indiana after June 28, 1992, was "emergency treatment"; and 2) he deserves equitable relief for CareAmerica's unjust enrichment.
 
 1. Emergency Treatment
 The CareAmerica plan states that:
 
 3
 CareAmerica will not pay charges incurred for services from other than your Primary Care Physician unless: (1) an Emergency exists, or (2) the Primary Care Physician or CareAmerica authorizes the use of another provider before the service or supply is obtained.
 
 
 4
 ER 101. The plan further provides that "follow-up care for an illness, injury or condition which required emergency treatment must be obtained from or authorized by [the] Primary Care Physician or CareAmerica." ER 104. Chapleau concedes that the treatment in Indiana following the initial round of chemotherapy was not authorized. He contends, however, that his treatment constituted emergency services, rather than follow-up care.
 
 
 5
 The Plan defines "emergency medical services" as:
 
 
 6
 Those services required for the sudden and unexpected onset of a symptom, illness or injury requiring immediate diagnosis or treatment, which the Member secures immediately thereafter, or as soon thereafter as the care can be made available, but in any case no later than twenty-four (24) hours after the onset of the condition. Heart attacks, poisoning, impairment of consciousness or respiration, broken bones and severe injuries are examples of medical emergencies.
 
 
 7
 ER 100. CareAmerica presents the testimony of Chapleau's Indiana doctor, Dr. Lawrence Einhorn, that Chapleau was not in an "emergent condition" when he came to Indiana. A.E.R. 76. In response, Chapleau points to a letter written by Dr. Einhorn on August 31, 1992, stating that testicular cancer is a "rapidly progressive disease" and opining that it was "not even a debatable issue" that the surgery should be done in Indiana. ER 60-61.
 
 
 8
 The letter fails to raise a genuine question of whether an emergency existed when Chapleau came to Indiana. The fact that Chapleau suffered from a "rapidly progressive disease" does not mean he faced an "emergency" as that term is commonly understood, and as it is defined in the Plan. Further, Dr. Einhorn's opinion that any surgery should be done in Indiana is not evidence that Chapleau faced an emergency. Dr. Einhorn's opinion rested on his belief that the Indiana Medical Center offered superior facilities. There is nothing to suggest that Chapleau did not have the time to travel to California to continue treatment.
 
 
 9
 Chapleau also argues that he reasonably relied on CareAmerica's decision to cover the initial round of chemotherapy. Any such reliance was unreasonable, however, given CareAmerica's early and repeated statements that CareAmerica would not authorize any treatment in Indiana after June 28, 1992.
 
 2. Unjust Enrichment
 
 10
 Despite his contentions on appeal, Chapleau failed to assert in his complaint any common law claims, including a claim of unjust enrichment. Nor could he. ERISA preempts any state law cause of action relating to health benefit plans. See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47 (1987).
 
 
 11
 Chapleau's basic grievance is that CareAmerica has not paid anything for his medical treatment after June 28, 1992. Chapleau asserts that an "out-of-contract provider" would have been necessary even in California, and that the company therefore reaped a windfall from Chapleau's decision to remain in Indiana: rather than paying the cost of Chapleau's medical care in California, the company paid nothing. Chapleau argues that such an outcome is unjust and that the company should at least reimburse Chapleau the amount of money that it would have paid if Chapleau had received treatment in California.
 
 
 12
 Chapleau fails to show that an out-of-contract provider was necessary. Moreover, even if we assume that such a provider was necessary, Chapleau's argument fails because equitable relief under ERISA is only available to redress any violation of ERISA, or to enforce the terms of the benefit plan. 29 U.S.C. § 1132(a)(3). Chapleau is unable to demonstrate that CareAmerica violated an ERISA provision or any term of the benefit plan.
 
 
 13
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3